UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                   S4 09 Cr. 1239 (PKC)

UNITED STATES OF AMERICA

      -against-

Arthur Nigro,
      a/k/a "Artie,"
      a/k/a "the Short Guy,"
      a/k/a "the Little Guy,"
Fotios Geas,
      a/k/a "Freddy," and
Ty Geas,

                                      Defendants.
------------------------------------------------------------------X


**MEMORANDUM OF LAW OF DEFENDANT IN RESPONSE TO THE
GOVERNMENT'S MOTIONS *IN LIMINE***


                                Frederick H. Cohn
                                Counsel for Fotios Geas
                                61 Broadway, Suite 1601
                                New York, NY 10006
                                (212) 768-1110

                                Harvey Fishbein
                                Counsel for Fotios Geas
                                61 Broadway, Suite 1601
                                New York, NY 10006
                                (212) 233-9555

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                           S4 09 Cr. 1239 (PKC)

UNITED STATES OF AMERICA

      -against-

Arthur Nigro,
      a/k/a "Artie,"
      a/k/a "the Short Guy,"
      a/k/a "the Little Guy,"
Fotios Geas,
      a/k/a "Freddy," and
Ty Geas,

                                        Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT IN RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government's Motions *in Limine* ("Government's Motions") seek to

    (1) admit evidence of other bad acts of the defendants as relevant proof of the charged crimes;

    (2) admit evidence of the defendants' prior prison terms;

    (3) admit statements made by Fotios Geas regarding the murder of Gary Westerman;

1

(4) admit certain statements made by Adolfo Bruno and Gary Westerman, named as victims in the indictment, to law-enforcement officials;

(5) admit expert testimony regarding organized crime; and

(6) empanel an anonymous jury.

Defendant Fotios Geas hereby responds to the Government's Motions as they apply to him.

## I. Evidence of Other Bad Acts of the Defendants as Relevant Proof of the Charged Crimes

The Government moves to admit evidence of

1. an assault committed by Ty Geas while incarcerated in the early 1990s against a prison guard, for which he received a four-year prison sentence;

2. robberies by Fotios Geas and Ty Geas in the 1990s and 2000s;

3. a 1996 truck theft by Fotios Geas;

4. prior conspiracies to murder Gary Westerman;

5. a conspiracy to murder Guiseppe Manzi;

6. additional acts of violence by the defendant;

7. additional extortions; and

2

      8.    narcotics trafficking.

The Government argues that the evidence of the other acts constitutes (i) direct proof of the crimes in the racketeering acts contained in the indictment, and/or (ii) shows the nature and existence of the charged racketeering enterprise, and/or (iii) background of the conspiracy and the relationships between the co-conspirators.[1] Further, the Government claims that the introduction of the evidence proffered does not violate Fed. R. Evid. 403 in that it is not unduly prejudicial.

The defendant objects to the Government's proffered evidence on relevancy grounds and that collectively it is unduly prejudicial, and we urge the Court to use its discretion regarding the admission of the proffered evidence. Specifically, the defendant objects to the following:

### *Assault Committed by Ty Geas while Incarcerated*

Evidence that Ty Geas assaulted a prison guard in the early 1990s while incarcerated for other charges is not relevant, in that it is not direct proof of the crimes in the racketeering acts contained in the indictment, does not show the nature and existence of the charged racketeering enterprise, and does not constitute

---

[1] The defendant does not dispute that there is precedent for the general grounds identified by the Government. However, where noted, the defendant believes the evidence should be precluded because the proffered evidence does not fit any of these recognized grounds or, in the alternative, it should be precluded because the evidence violates Fed R. Evid. 401 and/or 403.

3

background of the conspiracy or any relationship between the co-conspirators. The Government's proffered evidence, though, is really an effort to place facts before the jury to portray Ty Geas as a violent individual with the propensity to commit crime. Further, since Fotios Geas is the older brother of Ty Geas, there will be a spillover effect against Fotios Geas. Accordingly, this evidence should be excluded under Fed. R. Evid. 401 and 403.

*Drug Robberies by Fotios Geas and Ty Geas in the 1990s and 2000s*

The Government seeks to introduce testimony through Anthony Arillotta that Fotios and Ty Geas committed numerous robberies throughout the 1990s and 2000s. "In particular, Fotios and Ty Geas robbed drug dealers of drugs and/or money on numerous occasions, and used the proceeds of those robberies to finance their narcotics trafficking." Further, the Government argues that Arillotta's testimony will show "Fotios and Ty Geas frequently robbed other drug dealers of narcotics and sold the narcotics themselves." (P. 7, Government's Motion".)

According to the Government, the above-proffered evidence is relevant to prove the conspiratorial relationships, presumably between the Geas brothers and other members of the racketeering conspiracy, and to prove the alleged predicate offense of narcotics trafficking. However, by the Government's own words, the evidence has no relationship or connection to the enterprise charged. Rather, it is

4

merely evidence of Fotios and Ty Geas' own criminal activity, which was separate and distinct from both the enterprise and the charged predicate offense of narcotics trafficking. The only conspiratorial relationship it proves is the relationship between the brothers, Fotios and Ty Geas.

*Conspiracy to Murder Guiseppe Manzi*

In addition to the Government's argument that the evidence regarding an alleged conspiracy to murder Guiseppe Manzi is directly relevant to the Rico conspiracy charged in Count One, by footnote the Government advises that it may seek to add a racketeering act to Count Two, the substantive Rico Charge, relating to the alleged Manzi murder conspiracy. Certainly, if the Government at this late date, virtually on the eve of trial, attempts to supersede the indictment to add a significant and complex predicate racketeering act, the Court may very well deny the application. Therefore, by way of back door, the Government offers the same set of facts under a different guise.

The Government's proffer includes a number of different incidents, i.e. a robbery of Manzi's cousin at gunpoint in 2002 (no specific date); a disturbance at a restaurant owned by Manzi in the summer of 2003 (no specific date), in which Ty Geas tried to confront Manzi; two fights, including gunshots, in downtown

5

Springfield on August 29, 2003; and an incident in which gunshots were fired by unknown individuals directed at Anthony Arillotta's home on August 31, 2003.

The proposed evidence, by its very nature, requires extensive investigation by the defense, which is precluded by this late notice. Also, it is noteworthy that the Government claims that the conspiracy was aborted. Accordingly, the defense objects to the introduction of this evidence.

*Additional Acts of Violence by the Defendants*

Among the additional acts is an allegation that on July 11, 2004, Fotios Geas and another "associate," Angelo Malafronte, assaulted three individuals in Springfield, Massachusetts. Fotios Geas subsequently pled guilty and was sentenced to two years' imprisonment. The Government fails to show this event's connection to crimes charged in the indictment and will only lead the jury to conclude that the defendant has the propensity for violence.

*Additional Extortions*

As the Government points out in its Motions, "The defendants are specifically charged with extorting and/or conspiring to extort three sets of victims: (1) James Santianiello, the owner of the Mardi Gras and other establishments (Racketeering Act Five); (2) Genaro and Carlo Sarno, the owners of a vending

6

machine business (Racketeering Act Six); and (3) Michael and Anthony Grant, the owners of the Hustler strip club and other establishments (Racketeering Act Seven)." (Page 15, Government's Motions.) Now, for the first time, the Government seeks to introduce the extortion and attempted extortion of a number of other victims, ranging from individuals in Springfield, MA to businesses in New York City, in Springfield, and in Hartford, CT. The Government does not offer specifics as to dates and/or circumstances. While this evidence appears marginal at best, such late notice leaves no opportunity for the defense to investigate the alleged extortions, and the defendant objects.

### *Narcotics Trafficking*

The Government's Motion offers vague and general allegations that several members and associates of the Genovese family located in Springfield, including Anthony Arillotta, Emilio Fusco and Louis Santos, were involved in narcotics trafficking, both with the Geas' and separately as well. Since narcotics trafficking is one of the predicates alleged in the indictment, to the extent that such evidence is relevant the defendant recognizes that he has no grounds to object. However, the Government has not provided sufficient information to the defense to determine the extent of its relevance.

## II. Evidence of Defendants' Prior Prison Terms

The Government argues that this evidence is necessary to prove how the defendants' relationships developed with other co-conspirators, including the Government's cooperating witnesses, and to explain the whereabouts of the defendants during certain relevant time periods.

The introduction of evidence regarding the prison term of any of the defendants is highly prejudicial. Certainly the Government's stated purposes for the introduction of this evidence, if relevant, can be reached without reference to the defendants' prison terms. Suitably crafted stipulations would reach the same end, without the undue prejudice of the evidence itself.

Further, almost as an aside, the Government argues that Fotios Geas' pretrial detention in New York in this matter would be before the jury because the Government intends to offer certain recorded prison calls Fotios Geas made to his brother Ty Geas in April 2010. The Government argues that in those calls the brothers discussed, among other things, news reports that the FBI was digging for the remains of Gary Westerman in Massachusetts, and "the Geas' make a number of statements which the Government intends to argue tend to show their culpability in the Westerman murder." (P. 28, Government's Motion.)

In a letter dated January 20, 2011, the Government identified those telephone conversations as being calls on April 6, 8, and 10, 2010 from Fotios to Ty Geas. To date, the Government has not supplied the telephone call dated April 6. However, a review of the April 8 and 10 calls discloses that Ty Geas simply recounts news reports that mention both brothers' names in connection to the investigation and the search for the remains of Gary Westerman. In short, none of the conversations express anything more than their natural concern of being linked to a murder investigation. There are no admissions or anything that "tends" to implicate them.

### III.   The Proposed Expert Testimony Should be Disallowed

The Government, invoking the happy words of *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008), relies on anecdotal history to convince the Court that, since other judges in the district have allowed the testimony of their expert, Carillo, this Court ought to, as a knee jerk reaction, do the same. We respectfully object.

The Circuit's conditional approval of this kind of expert testimony is cautionary. *Mejia*, noting that the admission of expert testimony of this nature is within the broad discretion of the trial judge, reiterates the time-honored language of Rule 702 of the Federal Rules of Evidence and says, after noting that the

9

testimony should only be allowed if it explains matters only beyond the ken of the average juror,

"...the operation of [the mafia] ...should normally be used only for subjects that have esoterics reasonably perceived as beyond the ken of the jury"(citation omitted) p 191.

With this in mind, we suggest to the Court that the real purpose of this proposed testimony is to buttress the credibility of a principal Government witness, Anthony Arillotta. Arillotta, a person described by the Government as the leader of the Genovese Crime Family, will testify about murders that he ordered committed and lay the acts of murder at the feet of others. His testimony, as the Court will charge the jury in other terms, is inherently suspect. There is little doubt that he will discuss, at length, the structure of the Genovese Crime Family and the mechanisms with which it governs its members and acolytes.

There is no need for the Carillo testimony other than for the Government to be able to use it to confirm the testimony of Arillotta, and perhaps others, as to that portion of his testimony and obtain the spillover reliability regarding the rest of it. It is a charade.

There is nothing arcane about mafia governing structure. Countless books, films and newspaper accounts have ground the reality into the national consciousness. The dangers of the Government bootstrapping far exceed its ability

to aid the jury in understanding something far less complicated than the theory of relativity.

We respectfully suggest that the Court should rule that although this technique has become part of the Government's armatorium, under the circumstances of today rather than the circumstances of decades ago this evidence no longer qualifies as appropriate under Rule 702.

Even if the Court does not agree with this analysis as a matter of law, we respectfully urge the Court to exercise its discretion in not allowing the expert testimony because it is unnecessary and carries with it the dangers alluded to *supra*, the danger of buttressing other testimonial areas with which it should not be concerned.

### IV.     There Should Be No Anonymous Jury

The Government, as it does whenever it seeks an unwarranted advantage in a "mob" case, seeks an anonymous jury. Its arguments are simple. The defendants have shown a willingness to obstruct the law by killing someone where we allege the motive to be because the victims were being prevented from communicating with federal law enforcement. That shows contempt for the legal process likely to result in an attempt to subvert it. If the defendants and their lawyers don't know who the jury is, they cannot either bribe them or intimidate them.

11

It is difficult not to call this alleged analysis the nonsense that it is. Who are these defendants? Do they have the resources necessary to effect the goals attributed to them?

The answer to both questions is that the Geas brothers are alleged in the indictment to be low-level mob "associates". They are not leaders. They do not have access to the machinery of the mob (assuming such machinery exists). They have no money (counsel is assigned).[2] They are incarcerated and their visitation is limited and their phone calls are monitored.

Since all of the above is without question true (unlike the foundational allegations of the Government which ultimately require proof to the jury), why is the Government making this request?

If one believes the Government, the purpose of this application is to secure the process against tampering. A more cynical answer is that they have an excuse and they derive a real advantage if the motion is granted. The fact that the jury immediately presumes the worst of the defendants is another not insubstantial benefit to the Government. What then are the pluses and minuses for the parties?

As Shakespeare said, "What's in a name?" A name, from the jury selection point of view, is packed with information upon which the parties may draw in

---

[2] If the government argues that those arguments are not applicable to the defendant Nigro, rather than saddle the Geas brothers with the disabilities listed *infra,* they should be entitled to a separate trial.

12

exercising peremptory challenges. It discloses, to a greater or lesser degree, ethnicity. It leads one to question educational biases. If the name is attached to a married woman, it can lead one to find out if she has adopted her husband's name, and if his ethnicity or religion is different from hers, those facts can lead one to a conclusion, rightly or wrongly, that she is independent-minded and therefore less likely to go along with the crowd. If, as in this case, the defendants are alleged to be members of the Mafia, and if she is Italian[3], one would at least inquire whether that connection offends her or gives her an immediate knee-jerk reaction, causing her to credit, more likely than not, such allegations made by the Government.

The fact that this is a cynical attempt to gain advantage is made evident by the *voire dire* proposed by the Government. This tapioca exercise proposed by the Government offers no replacement for the information contained in a name. If the Government was concerned with the fairness of the process, it would have balanced this request with a concession that there ought to be a more intrusive questionnaire or individual *voire dire* where these areas can be explored without embarrassment to the prospective juror.[4]

---

[3] The fact that the Geas brothers are of Greek extraction does not remove the "mafia" slur for Italian Americans.

[4] Because of the volume of new material and the sheer mass of the Government's motion *in limine*, we are not able at this time to submit a proposed *voire dire*, particularly since we hope that, if the Court sees fit to grant the Government's motion for an anonymous jury, we will have an opportunity to submit something more relevant than the usual standardized request.

We oppose this application. If the court grants it, we demand an alternative method of jury selection as set forth *supra* along with a preliminary charge blunting the fear mongering in which the government is engaging.

### V. Out-of-court Statements by the Murder Victims Should Not Be Allowed

The Government, relying on *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982) as codified in Rule 804(b)(6), argues that statements made by the murder victims can be used in this circumstance as the defendants have forfeited the right to challenge that testimony as hearsay due to their own misconduct.

We respectfully submit that the Rule is generated to prevent conduct that will illicitly keep people off the witness stand in cases already commenced at the time of the misconduct.

Here the Government argues in a perfect circle. Bruno and Westerman were killed, they allege, to prevent them from talking to the Federal Government, a proposition that needs proving beyond a reasonable doubt. Then the Government takes it one step further. Because we allege that they were killed to keep them from talking, they can speak from beyond the grave despite the fact that at the time of their death there was no prosecution pending.

There appears to be little if any evidence that the defendants knew that either of the victims was cooperating with the Federal Government and it seems that they were not. Rather, they were cooperating with Massachusetts prosecutions.

Unlike *United States v. Stewart*, 485 F.3d 666 (2d Cir. 2007), where there was direct evidence that the victim was shot because he had been told that if he did testify he would be shot, here, at the time of the alleged declarations of Bruno and Westerman, there was no federal prosecution pending, nor, as far as we know, was one contemplated at the time of these declarations. This is different than *Stewart*, where there is a straight-line connection between the intimidation and the intended result of that misconduct. "Tell [the victim] not to go to the identification line up" Stewart, *supra* p 671.

What makes matters worse is that the Westerman statements do not appear to be based on firsthand knowledge. If Westerman were alive, he probably would not be allowed to testify to them as hearsay.[5]

Should the Court entertain the notion that these statements may be admissible, the defendant, Fotios Geas, demands a hearing prior to opening statements to determine their admissibility as hearsay as if Westerman and Bruno were alive and taking the stand, and as to the foundation for the waiver through misconduct itself.

---

[5] The Government has not seen fit to advise us of the source of Westerman's information so that if there is a hearsay exception available, it is unknown to us.

15

Dated: New York, NY
      January 21, 2011

                Respectfully submitted,

                _____
                Frederick H. Cohn

                _____
                Harvey Fishbein
                Attorneys for defendant Fotios Geas
                61 Broadway
                Suite 1601
                New York, NY. 10006
                212-768-1110/212-233-9555