UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA

              - against -

ARTHUR NIGRO,
FOTIOS GEAS, and
TY GEAS,

                       Defendants
-------------------------------------------------------------x

: S5 09 Cr. 1239 (PKC)
: ECF Case
:
:
: Electronically filed
:

# MEMORANDUM of LAW in OPPOSITION

## TO
## GOVERNMENT'S REPLY BRIEF REGARDING MOTIONS IN LIMINE

Attorneys for **Arthur Nigro**

Lawrence Hochheiser
15 Maiden Lane
Suite 1500
New York, NY 10538
LH@Hochheiser.com
(646) 863-4250

Murray Richman
2027 Williamsbridge Road
3rd Floor
Bronx, NY 10461
MR@msn.com
(718) 892-8588

February 7, 2011

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA
                                              :    S5 09 Cr. 1239 (PKC)
            - against -
                                              :    ECF Case
ARTHUR NIGRO,
FOTIOS GEAS, and
TY GEAS,                                      :    Electronically filed

                        Defendants            :
------------------------------------------------------------x
```

## MEMORANDUM of LAW in OPPOSITION

### TO
### GOVERNMENT'S REPLY BRIEF REGARDING MOTIONS IN LIMINE

**Arthur Nigro, defendant**

**The hearsay statement of Adolfo Burno should not be admitted into evidence. (Responding to Government's Point IV)**

### Introduction

The Government contends that a statements made by (since murdered) Adolpho Bruno about Emilio Fusco to FBI SA Cliff Hedges, during a conversation in a pizzeria, is admissible against the defendants.[1]

---

[1] On February 12, 2002 at the Red Rose Pizzeria, in Springfield, MA.,

As support for its position (admissibility) the Government invokes, primarily, Rule 804 (b) (6)[2] and its precursor United *States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982).

### Whether Bruno was a potential witness

The Government's submission, in referring to Adolfo Bruno's conversation about Emilio Fusco with FBI SA Cliff Hedges, easily allows the assumption that Bruno was an informant, confidentially providing intelligence to the Government. But the Government's language – whether by design or by happenstance – obscures whether Bruno was in fact an informant and potential witness. The actual context and circumstances in which the conversation took place – and whether Bruno was speaking as an informant, or whether as casual conversationalist (with an unknown agenda), we submit, is relevant to the issue of the admissibility of the statement.

### Forfeiture by Wrongdoing

Rule 804 (b). Hearsay exceptions.

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> \*\*\*\*
> (6) Forfeiture by Wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant *as a witness*." (emphasis added).

Wrongfully causing the death of another person does not *ipso facto* make his statements admissible under Rule 804(b) 96). This is self-evident, since otherwise in any trial for murder

---

[2] Federal Rules of Evidence (Fed. R. Evid.).

3

the deceased victim's statements would be routinely introduced against the accused. A specific reason for the procurement of the declarant's unavailability must have been to eliminate the declarant *as a witness*.

While we recognize the high purpose of the Forfeiture by Wrongdoing principle enunciated by *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982, and later (in 1997) codified as Rule 804 (b0 (6), we suggest that application of the Rule's mandate, set forth succinctly in just some 45 words, must be carefully monitored by the Court.

## Applying Rule 804 (b) (6)

The Second Circuit in *United States v. Dhinsa*[3] (a case cited by the Government), mindful that "misconduct waived not only [the defendants'] confrontation rights but also their hearsay objections,"[4] made clear that "This does not, however, mean that the declarant's statements will be admitted automatically." [5]

---

[3] 243 F.3d 635 (2d Cir. 2001).

[4] quoting *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996).

[5] *United States v. Dhinsa*, 243 F.3d 635 at 655 (2d Cir. 2001).

4

**Determinations to be made by the Court**

We submit that the Court should make at least two preliminary determinations:

● whether the statement is of the kind contemplated by Rule 804 (d) (2) and the case law; and
● whether the statement is trustworthy enough to be admitted.

Although the *Dhinsa* Court noted that when a hearsay statement is admissible by virtue of the "Waiver-by-misconduct" rule, the defendant has waived not only his right to confrontation, but "by operation of the accused's waiver of that right," (citing *United States v. Houlihan*, 92 F.3d 1271, 1281 (1st Cir. 1996)) "the district court is not required to assess independently the reliability of those statements...."[6] Nonetheless, the The *Dhinsa* Court seemed to provide equivalent protection from another source, Rule 403:

> [A]after the district court finds by a preponderance of the evidence that the hearsay statement is admissible under *Fed. R. Evid. 804(b)(6)*, it must still perform the balancing test required under *Fed. R. Evid. 403* "in order to avoid the admission of facially ***unreliable hearsay***." *Dhinsai* at 655. (emphasis added).

While it may seem odd to enlist Rule 403 – which provides the traditional "balancing" test regarding prejudice versus evidentiary usefulness – to "avoid the admission of facially ***unreliable hearsay***," it seems a reasonable method to ensure the trustworthiness essential to a fair trial, in circumstances of a Rule 804 (b) (6) waiver.

---

[6] Referring to the protections normally provided to a statement admitted as an exception to the hearsay rule, set forth in *Lilly v. Virginia*, 527 U.S. 116 (1999).

5

**Pre-trial evidentiary hearing**

There are questions inherent in Rule 804 (b) (6), as well as in Rule 403. They must be determined via pre-trial hearing. Our Court of Appeals instructs in *Dhinsa*:

> [C]onsistent with our pre-Fed. R. Evid. 804(b)(6) precedent, we now hold that, prior to finding that a defendant waived his confrontation rights with respect to an out-of-court statement by an actual or potential witness admitted pursuant to *Rule 804(b)(6)*, the district court must hold an evidentiary hearing outside the presence of the jury....

The Court prescribed in some detail the nature and purpose of the required hearing. "[T]he government has the burden of proving by a preponderance of the evidence that":

> (1) the defendant (or party against whom the out-of-court statement is offered) was involved in, or responsible for, procuring the unavailability of the declarant...in any...way...;and

> (2) the defendant (or party against whom the out-of-court statement is offered) acted with the intent of procuring the declarant's unavailability as an actual or potential witness. (*Dhinsa* at 653-4) (internal quote and citation omitted).

**Bruno's statement is not envisioned by Rule 804 (6) (b)**

Simply put, what *Mastrangelo* (and its progeny, including *Dhinsa*) and Rule 804 (b) (6) contemplate is a defendant preventing a witness from giving his testimony. We appreciate that Forfieture by Wrongdoing, like any other corrective concept, cannot list every situation which may properly come within its preview, including situations unanticipated by its drafters.

But there are limits. And the limits, naturally, cannot be defined by a prosecutor's creativity.

It is beyond debate that Bruno's statement is – at least – not within the heartland of the Forfeiture rule. We do not contend that a statement, to fall within the rule, must have formality,

6

structure, or any other particular attribute. Nor do we contend that a declarant must have been an actual witness, or possess any particular attribute or quality. That said, such considerations are nonetheless useful and appropriate to determine the applicability of the rule to a particular statement.

The rule must have a discernable range. Not every statement and not every declarant can be embraced by the rule.

As an example of the heartland – the typical Forfeiture by Wrongdoing situation – is, of course, a witness in a case, cooperating with law enforcement, the subject of formally-made debriefing reports, and the usual rest. That is one end – the near end – of the spectrum. A situation may fall closer to, or beyond the far end. There is considerable distance within the boundaries of the acceptable range. Does Bruno's statement lie within or outside the range?

**Questions unanswered**

There are many questions, the answers to which may affect the applicability of the Forfeiture by Wrongdoing rule. Here are some.

- Bruno's statement to SA Hedges was unlikely to have benefitted from prior contemplation; to what extent was it off-the-cuff?
- Did Bruno anticipate memorialization or use of his statement?
- Was the statement recorded or, other than by Hedges, witnessed?
- Who introduced the subject of the statement, Hedges or Bruno?
- What was the position of the speaker who introduced the subject?
- What is the significance of the term "confirmed," as used in Hedges' report and the Fusco PSR?
- Did Bruno have an "agenda" during his conversation with Hedges?
- How did the meeting between Bruno and Hedges come about?
- Was Bruno a "cooperator" with law enforcement?
- Was he a witness, or a potential witness?
- Did a defendant believe Bruno to be a witness or potential witness?

- Prior to Bruno's death, what did the alleged conspirators learn about the nature and context of Bruno's statement to SA Hedges?[7]
- Was a reason for Bruno's death to cause his unavailability as a witness?

## Subject of the evidentiary hearing

Bruno's statements to FBI SA Cliff Hedges should not be admitted.

A pre-trial evidentiary hearing is appropriate to determine the admissibility of Bruno's statements under the Rule 804 (b) (6), and under Rule 403 "in order to avoid the admission of unreliable hearsay." *Dhinsa* at 655.

---

[7] The statement allegedly came to the defendants' notice after it appeared September 9, 2003 in Fusco's PSR. But this was almost three months prior to Bruno's death (November 23, 2003). During the elapsed time It seems likely that the nature and context of Bruno's statement to SA Hedges would have been disclosed.

8

**Other crimes evidence the Government seeks to offer is unduly prejudicial, and demonstrates a propensity to commit violent crimes (Responding to Government's Point I [I.A.2.f. and g. in main motion]).**

**Violent beating, fall of 2003, in Bronx, NY**

The Government contends that in the fall of 2003, in Bronx, NY, Arthur Nigro was involved in a "violent beating...rooted in a dispute Nigro was having with another member of the Genovese Family." The beating, according to the Government, resulted from the belief that an individual named Thomas Amaratti was *disrespected* by an alleged associate named Anthony Defranco. (Govt's main motion, p. 14). No other useful facts are given.

Of course, such evidence is inflammatory. Unexplained, as it is, no relevance to our indictment is presented. And, so far as we can determine, the discovery provided to date reveals no connection of this incident to the charges.

Standing alone, this evidence is highly inflammatory, and obviously dangerous. But worse, the violence in the unrelated assault is of the same sort – and occurs at about the same time (fall, 2003) as the shooting death of Bruno. Moreover, the reason alleged for the Bronx assault is identical to a reason alleged for the killing of Bruno: "disrespect." [8]

The prejudice to Arthur Nigro would be incalculable; just the kind of unnecessary and enormous damage Rule 403 was designed to prevent:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

---

[8] The reason for the Bronx assault, the Government contends, was that Defranco "disrespected" a Genovese associate. (Govt's main motion, p. 14).

A reason for the murder of Bruno, the Government contends, was that Bruno was "disrespectful" in refusing to come to New York when called upon. (*E.g.*, FBI SA Joy Adams, 8/9/2010 affidavit in support of request for extradition [of Emilio Fusco], ¶17).

9

"Although relevant." Thus, all the more so when the damaging violence, as we anticipate, requires strained and creative argument to attempt denial of irrelevancy.

The Bronx violent assault evidence, regardless of its claimed purpose, is in effect improper character evidence prohibited by Rule 404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

As the Second Circuit has repeatedly instructed, character evidence used to "prove the defendant's propensity to commit the crimes charged" is inadmissable and violates Rule 404(b). *United States v. Diaz*, 176 F.3d 52, 79 (2d . Cir. 1999); *see also United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (holding "uncharged bad acts may be admitted into evidence for any relevant purpose other than propensity, provided that the probative value of the evidence outweighs the danger of unfair prejudice.")

The danger that the violent assault testimony evidence will impact the jury emotionally patently outweighs its necessity or legitimate value. It serves primarily to show propensity; it violates Rule 404(b).

## Extortion in Florida

The government also seeks to introduce evidence regarding extortion and attempted extortion of "assorted individuals and business owners in Florida." (Govt's main motion, p. 15-16). The Government's description of its proposed evidence is vague and presents no helpful facts. Thus, Arthur Nigro cannot challenge this evidence without more information.

10

The Government suggests the otherwise painful damage from such testimony will be tolerable, because "This testimony will be limited in nature, and will be almost exclusively in the form of cooperating witness testimony." This offers no solace to the defense. "Limited" testimony (brief and short on data) by cooperators (rather than neutral civilians) allows for great damage in a short burst, absent a first-hand fact witness for further examination. The evidence, if we credit the Government's minimalist characterization, seems hardly if at all necessary. But the prejudice is great. Considered under Rules 403 and 404, such damaging, but armor-clad, accusations should have no place in a trial involving the serious charges here.

Although it is our position that this evidence should be precluded under Rules 403 and 404, we ask the Court to direct full disclosure of the facts and circumstances as to the evidence of uncharged crimes the Government seeks to introduce against Arthur Nigro.

## Conclusion

The hearsay statements made by Adolph Bruno to FBI SA Cliff Hedges should not be admitted.

The Evidence of Other Bad Acts proffered by the Government should not be admitted.

Evidentiary hearings should be held to determine these and other issues.

## Joinder in arguments of other counsel for co-defendants

Defendant Arthur Nigro joins in the arguments of counsel for co-defendants, to the extent applicable to Nigro.

Dated: New York, NY
      February 7, 2011

Respectfully submitted,
Attorneys for Arthur Nigro

S/_____
Lawrence Hochheiser
15 Maiden Lane, Suite 1500
New York, NY 10538
(646) 863-4250
LH@Hochheiser.com

Murray Richman
2027 Williamsbridge Road, 3rd Floor
Bronx, NY 10461
(718) 892-8588
MR@msn.com