UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

UNITED STATES OF AMERICA,           :

                                        :

               - v.-                 :

                                        :

EMILIO FUSCO,                      :      S4 09 Cr. 1239 (PKC)

                                        :

                    Defendant.     :

                                        :

----------------------------------------------------------------x

## GOVERNMENT'S OPPOSITION TO DEFENDANT EMILIO FUSCO'S MOTION FOR BAIL

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
       of America

DANIEL S. GOLDMAN
NICHOLAS L. McQUAID
Assistant United States Attorneys

     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,       :
       :
    - v.-       :
       :
EMILIO FUSCO,       :      S4 09 Cr. 1239 (PKC)
       :
    Defendant.       :
------------------------------------------------------------------x

GOVERNMENT'S OPPOSITION TO DEFENDAT EMILIO FUSCO'S MOTION FOR BAIL

The Government respectfully submits this memorandum in opposition to defendant Emilio Fusco's motion for bail.  Fusco poses both a risk of flight and a danger to the community.  The relevant bail factors make plain that Fusco's detention pending trial is necessary because no combination of conditions can reasonably assure the Fusco's appearance as required or the safety of the community.   Moreover, Fusco's bail motion does not even present a proposed bail package, much less one that could reasonably assure the appearance of the defendant and the safety of other individuals and the community.

A.    **Background**

Indictment S4 09 Cr. 1239 (PKC) charges Fusco in five counts.  Count One charges Fusco with conspiring to participate in the affairs of a racketeering enterprise – specifically the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Family") – from 2001 through February 2010, in violation of Title 18, United States Code, Section 1962(d).  Count One charges that Fusco conspired to participate in a series of underlying racketeering activities including, among other things, conspiracy to murder; murder; extortion; loansharking; operation of illegal gambling businesses; and narcotics trafficking.  (Indictment ¶ 11).  Count

One also contains the following sentencing allegations: (1) Fusco participated in the November 23, 2003 murder of Adolfo Bruno in Springfield, Massachusetts (Indictment ¶¶ 18-19); (2) Fusco participated in the November 4, 2003 murder of Gary Westerman in Springfield, Massachusetts (Indictment ¶¶ 20-21).

Count Two charges Fusco with a substantive racketeering offense, in violation of Title 18, United States Code, Section 1962(c).  Specifically, Fusco is charged with committing the following racketeering acts:

1) Racketeering Act One – murder and conspiracy to murder Adolfo Bruno;

2) Racketeering Act Two – murder and conspiracy to murder Gary Westerman;

3) Racketeering Act Five – Extortion conspiracy and extortion of various strip club owners and business in Springfield, Massachusetts;

4) Racketeering Act Twelve – conspiring to distribute and possess with the intent to distribute mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

Fusco is also charged in Counts Six and Seven, which charge extortion conspiracy and extortion of the owner of various strip clubs and businesses in Springfield, Massachusetts.  Finally, Fusco is charged in Count Thirteen for interstate travel in aid of racketeering.

Fusco was arrested in Italy on July 29, 2010.  Fusco arrived in the Southern District of New York on or about May 15, 2011, and was presented before Magistrate Judge Henry B. Pitman on or about May 16, 2011, when he was detained upon consent without

prejudice to a future bail application.  At the initial pretrial conference on June 17, 2011 (the "June 17 Conference"), Fusco's counsel raised the issue of bail, and after some argument, the Court set a schedule for bail motions and a bail argument to be held on July 26, 2011 (a copy of the transcript of the June 17 conference is attached as Exhibit A).

At the June 17 Conference, and in his bail papers, Fusco's arguments consist of the following: (1) notwithstanding the fact that Fusco purchased a ticket to travel to Italy on April 8, 2010 — during the time that the FBI was digging up the body of Gary Westerman in Agawam, Massachusetts, as reflected in news reports during that time — Fusco did not, in fact, flee the country when he traveled to Italy, where he was ultimately apprehended on July 29, 2010; (2) Fusco was previously arrested and convicted of RICO and money laundering charges in the District of Massachusetts, during which time he had been released on bail with home detention and electronic monitoring "without incident" (Exh A. at 37:13) and without "violat[ing] the conditions of his bail. . ." (Affirmation of William I. Aronwald at 3 ("Aronwald Aff."); and (3) that the Government's evidence – which Fusco mistakenly asserts is solely the testimony of three cooperating witnesses – is weak (Defendant's Memorandum In Support of Motion for Bail at 2-3 ("Def Mem.")).  Fusco's oral and written submissions mischaracterize the strength of the Government's evidence, and, more importantly, simply ignore critical factors to a bail determination, such as the fact that Fusco is charged with committing two murders *while on bail* in the District of Massachusetts or the fact that Fusco was extradited from Italy, where he is a dual citizen and has extensive ties.  As a result, the Government respectfully submits that Fusco should be detained pending trial, which is currently scheduled for April 16, 2012.

3

**B.      Applicable Law**

*A.      The Bail Reform Act: 18 U.S.C. § 3142*

Title 18, United States Code, Section 3142(e) provides that if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," he or she shall order the defendant detained pending trial.  18 U.S.C. § 3142(e).  In assessing a defendant's risk of flight and the danger to the community presented by his release, Congress has directed courts to consider several factors: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).  In seeking pretrial detention, the Government bears the burden of showing by a preponderance of the evidence that the defendant poses a risk of flight or, by clear and convincing evidence, that the defendant poses a danger to the community, and that no condition or combination of conditions can address those risks.  See id. § 3142(f); see also United States v. Sabhani, 493 F.3d 63, 75 (2d Cir. 2007); United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Friedman, 837 F.2d 48, 29 (2d Cir. 1988); United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987).[1]

---

[1]      In certain cases, "a rebuttable presumption" arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community and/or assure the appearance of the defendant as required.  See 18 U.S.C. § 3142(e). While Fusco concedes that the presumption of detention applies with respect to danger of the community, (Aronwald Aff at ¶10), the Government currently believes that the rebuttable presumption does not apply to this case, either with respect to danger to the community or risk of flight.  For the reasons stated herein, however, the evidence is overwhelming that the defendant is both a danger to the community and a risk of flight, and should be detained on those bases, irrespective of whether any presumption applies.

B.      *Second Circuit Law*

Courts in this Circuit routinely consider the fact that a defendant holds a position in organized crime (as Fusco does here) — and hence has the ability to direct the criminal conduct of others — as a significant factor in favor of detention.  Most recently, in United States v. Marino, 2010 WL 4009104 (2d Cir. Oct. 14, 2010), the Second Circuit affirmed an order of detention by the District Court of Daniel Marino, who sat on a three-member panel presiding over the Gambino Family's affairs.  The Court held that "the precise title he [Marino] held – whether boss, street boss, or captain – is of little significance to the danger determination.  The fact of his past violent activities, together with his ongoing ability to direct the conduct of criminal confederates, provided clear and convincing evidence of the present danger he posed." Id. at *2.   The Court also affirmed the detention order because Marino's "role in the Gambino crime family signaled that he had not separated himself from the criminal enterprise for which he carried out violence and obstruction and confirmed that he continued to be in a position to call on enterprise members to carry out violent activities, among other crimes, on his behalf."  Id. at *3. See also United States v. Onofrio Modica, et al., 09 Cr. 1243 (LAK) (detaining various Gambino Family members and associates on danger grounds based in part on mafia participation); United States v. Gotti, 219 F. Supp.2d 296 (E.D.N.Y. 2002) (Gambino Family Acting Boss Peter Gotti detained as danger to the community), aff'd United States v. Ciccone, 312 F.3d 535 (2d Cir. 2002); United States v. DeFede, 7 F. Supp.2d 390, 393 (S.D.N.Y. 1998) (Luchese Family Acting Boss Joseph DeFede detained as danger to the community); United States v. Agnello, 101 F. Supp.2d 108, 116 (E.D.N.Y. 2000) (Gambino Family Soldier Carmine Agnello detained as

5

danger to the community); <u>United States</u> v. <u>Cicale</u>, 2006 WL 2252516 at *6 (E.D.N.Y. 2006)

(Bonanno Family associate Stefan Cicale detained as danger to the community); <u>United States</u> v.

<u>Santora</u>, 225 Fed. Appx. 21, 22 (2d Cir. 2007) (upholding the District Court's holding that

"Santora was a danger to his community because he was an acting underboss in the Bonanno

crime family and he had committed a crime of violence . . .  as more than adequate to support a

finding that 'no condition or combination of conditions will reasonably assure' the safety of the

community").

   The Second Circuit has held that home detention and electronic monitoring are

insufficient to protect the community against dangerous individuals:

> Home detention and electronic monitoring at best elaborately
> replicate a detention facility without the confidence of security such
> a facility instills.  If the government does not provide staff to monitor
> compliance extensively, protection of the community would be left
> largely to the word of [the defendants] that [they] will obey the
> conditions.

<u>United States</u> v. <u>Millan</u>, 4 F.3d 1039, 1049 (2d Cir. 1993) (citations and internal quotations

omitted).  <u>See also</u> <u>United States</u> v. <u>Marra</u>, 165 F. Supp. 2d 478, 486 (W.D.N.Y. 2001) (finding

"that electronic monitoring will not reasonably assure defendant's presence as required.  At most,

electronic monitoring would only reduce defendant's head start should she decide to flee").

<u>Agnello</u>, 101 F. Supp. 2d 108 at 114-115 (finding "his activities inside the house will not be

observed, nor is it reasonable to believe that the defendant could not evade monitoring by

obtaining access to communication devices and employing other methods to carry on criminal

activity and to endeavor to obstruct justice.  A security guard posted outside, video cameras

directed at the outside of the house, and monitoring of telephone lines cannot be relied upon

without good faith compliance from the defendant") .

### C.   Discussion

Fusco should be detained as a flight risk and a danger to the community.  As discussed below, all four of the statutory factors identified in 18 U.S.C. § 3142(g) weigh in favor of Fusco's continued detention.

### 1.   Nature And Circumstances Of The Charged Crime

Fusco is charged in this case with being a made member of the Genovese Family, which he does not dispute in his bail papers.  Moreover, as a made member, Fusco is charged with committing serious crimes on behalf of the Genovese Family, including two murders.  The nature of these crimes, particularly that they were crimes of violence and were committed on behalf of a powerful criminal enterprise that continues to function today, strongly counsels in favor of detention.

### 2.   The Weight of the Evidence

The evidence against Fusco is very strong.  This factor clearly weighs in favor of detention.  In his bail papers, Fusco claims that the evidence against him "essentially consists of the testimony from [cooperating] witnesses."  Def. Mem. at 2.  Fusco is simply mistaken.  While the evidence against Fusco with respect to the murders includes the devastating testimony of three cooperating witnesses, it also includes physical evidence, relevant documents, and recordings of three of Fusco's co-conspirators discussing Fusco in the context of both murders.

As the Court will recall, the catalyst for the Bruno murder was a portion of Fusco's Presentence Investigation Report for his RICO conviction in the District of Massachusetts, in which Bruno was alleged to have told an FBI agent that Fusco was a made member of the Genovese Family.  All three cooperating witnesses – including Frankie Roche –

testified that Fusco showed them that document.  Moreover, Fusco not only provided Frankie Roche with the murder weapon for the Bruno murder – a .45 caliber gun that Roche picked up under a dumpster behind the Family Pizza restaurant – but Fusco also alerted Freddy Geas that Bruno would be at the Mr. Carmel Social Club the night Roche murdered Bruno.  As to the Westerman murder, the evidence will show that Fusco went with Anthony Arillotta to meet the Geas brothers at Joseph Iellamo's house, where the Geas brothers repeatedly shot Westerman while Arillotta and Fusco bashed in Westerman's head to insure he was dead.

Finally, the charges against Fusco are not limited to murder, a fact that is never mentioned in Fusco's bail papers.  The evidence of the other charges, which include extortion (a crime of violence) and narcotics distribution is also very strong and will include cooperator testimony, as well as recordings of the defendant himself.

### 3.       History And Characteristics Of The Defendant

There is no dispute that Fusco is a member of the Genovese Family and has a prior felony conviction for RICO and money laundering.  Moreover, as discussed above, the murders with which Fusco is charged occurred while he was on bail prior to surrendering for his 33-month sentence.  Fusco is a professional, violent criminal who became involved in organized crime soon after arriving in this country from Italy.  As a result, this factor strongly supports detention to protect the community.

The limitations of home detention, which Fusco suggests is a viable alternative to detention in this case, are particularly evident for a defendant with Fusco's history and characteristics.  As a made member of the Genovese Crime Family, a powerful and disciplined criminal organization, Fusco could continue to commit crimes while on home detention by directing other members of the Genovese Crime Family and its associates to act on his behalf.

8

The nature Fusco's involvement in the Bruno murder offers a chilling example of Fusco operating in just this way: Fusco participated in the murder by, among other things, publicizing the allegation that Bruno had provided information to law enforcement, providing Roche with a gun to shoot Bruno, and then alerting Freddy Geas to where Bruno would be on a certain night. All of Fusco's actions, which led to a ruthless murder, could have easily been accomplished by Fusco without leaving his home.

### 4.    Danger Posed By Release

In order to assess the possible danger to the community posed by Fusco's release, one need only look at Fusco's actions while on bail in his previous case in Massachusetts, as Fusco himself urges the Court to do.  Fusco was granted the courtesy of voluntary surrendering for his sentence on or about November 29, 2003.  Within the four weeks prior to that surrender date, Fusco committed not one, but two murders.  In bail motion, Fusco has the temerity to argue that his behavior while on bail counsels in favor of release, but in doing so completely ignore those *two* murders.

Moreover, as discussed above, Fusco is a true risk of flight.  Defense counsel exhaustively details the various reasons why Fusco's trip to Italy on April 13, 2010 (after purchasing a ticket on April 8, 2010) was not an effort to return to his native Italy to avoid prosecution for the Westerman murder.  The facts, however, belie Fusco's assertion.  First, he purchased his ticket on April 8, 2010, *while the FBI was digging up the body of Gary Westerman*, and after several days of extensive news coverage of the dig in Springfield, Massachusetts.  Second, the departure date was April 13, 2010, a mere five days after the purchase.  A savvy criminal, Fusco wisely purchased a round-trip ticket so as to avoid the obvious appearance of fleeing the country with a one-way ticket.  Yet Fusco never returned,

forcing the Government to arrest him in Italy and extradite him to this District, conveniently after the trial of his co-defendants.[2]  While defense counsel goes to great lengths to explain away the fact that Fusco remained in Italy for four months until his arrest in August 2010, the fact that he comfortably stayed in a foreign country for four months shows that his ties to this country are minimal and that he is perfectly capable of living outside United States jurisdiction.  Moreover, Fusco's flight to Italy prompted the Government to exclude Fusco from the death-eligible murder charges of which his co-defendants were convicted because Italy will not extradite a defendant who potentially (even if not actually) faces the death penalty.  As a result, even if he is convicted of the murder charges, Fusco, unlike his co-defendants, will not face a mandatory life sentence.

More importantly, Fusco fails to recognize that because of his extensive ties to Italy – "He is a dual citizen of Italy . . ., he was born in Italy, his mother and sister and brothers still reside in Italy."  Exh. A at 22:24-23:1 – and his lack of ties to the United States, he poses a serious risk of flight (particularly in conjunction with the serious charges alleged against him, the likes of which he has never faced before), regardless of whether he fled to Italy in April 2010.  This factor alone would counsel strongly for detention even if Fusco had not already previously fled the country to avoid prosecution.

Fusco is facing the most serious charges one can face – a charge that is far more serious than previous charges levied against him and one that, if he is convicted, is likely to result in a prison term that is far longer than the 33 months' imprisonment he was sentenced to in his

---

[2]     Fusco argues that he was previously alerted that he was the target of an investigation into murder in February 2010 and did not flee then, and therefore blithely asks the Court to conclude that his Italy trip in April 2010 was not to avoid charges.  There is, however, an obvious and significant distinction between simply being told by the FBI that you are a target of an investigation and learning that the FBI is digging up a body that you helped murder and bury.

previous case.  He also has extensive ties to a foreign country.  In sum, he has the incentive to

flee and hide; he has the wherewithal, having done so previously; and he has the opportunity to

do so as a citizen of another country where most of his family lives.   The risk of flight could not

be more plain.

       **D.**      **Conclusion**

Fusco comes before this Court as a convicted violent felon and acknowledged

Mafia member.  He is charged with a wide array of crimes, including two murders that occurred

while he was previously on bail.  He fled the country upon learning that charges against him were

imminent.  He has limited ties to this country, extensive ties to Italy, and has demonstrated an

ability to comfortably live outside the reaches of United States law enforcement.  Finally, Fusco

faces life imprisonment if convicted here.  For these reasons, Fusco's detention should be

continued.


                Respectfully submitted,

                PREET BHARARA
                United States Attorney
                Southern District of New York

     By:           /s/
                Daniel S. Goldman/Nicholas L. McQuaid
                Assistant United States Attorney
                (212) 637-2289/1049