UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                :
UNITED STATES OF AMERICA,          :
                                                :
           - v.–                           :           S5 09 Cr. 1239 (PKC)
                                                :
ARTHUR NIGRO,                          :
           a/k/a "Artie,"                 :
           a/k/a "the Short Guy,"     :
           a/k/a "the Little Guy,"     :
FOTIOS GEAS,                            :
           a/k/a "Freddy," and        :
TY GEAS,                                  :
                                                :
                    Defendants.         :
                                                :
-------------------------------------------------------x

GOVERNMENT'S SENTENCING MEMORANDUM

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States
                                             of America

ELIE HONIG
DANIEL S. GOLDMAN
Assistant United States Attorneys

       - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                     :

UNITED STATES OF AMERICA,       :
                                       :

             - v.-          :                S5 09 Cr. 1239 (PKC)
                                     :

ARTHUR NIGRO,               :
        a/k/a "Artie,"       :
        a/k/a "the Short Guy,"  :
        a/k/a "the Little Guy,"  :
FOTIOS GEAS,              :
        a/k/a "Freddy," and   :
TY GEAS,                  :
                                       :
                Defendants.     :
                                       :
-------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

      The Government respectfully submits this memorandum in advance of the sentencing of defendants Arthur Nigro, Fotios Geas, and Ty Geas.  All three defendants are scheduled to be sentenced on September 12, 2011 at 11:00 a.m.

      As discussed in more detail below, all three defendants are subject to statutorily-mandated sentences of life imprisonment.  Nonetheless, the Government submits this memorandum to summarize the background of the case and the facts underlying the convictions; to set forth the appropriate Guidelines calculations for each count of conviction; and to argue for particular sentences on those counts of conviction that do not require life sentences.

## I.      The Indictment

Superseding Indictment S5 09 Cr. 1239 (PKC) (the "Indictment") was filed on January 20, 2011.  The Indictment charged Arthur Nigro, Fotios Geas, and Ty Geas, among others and in various combinations, in seven counts.

Count One charged that Nigro, Fotios Geas, and Ty Geas participated in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d). Specifically, the Indictment charged all three defendants with conspiring to participate in the affairs of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Family") through a pattern of racketeering activity that included murder, robbery, extortion, loansharking, narcotics trafficking, and gambling.

Count Two charged all three defendants with substantive racketeering, in violation of Title 18, United States Code, Section 1962(c).  The Indictment charged the defendants – in various combinations – in nine predicate racketeering acts: (1) the November 23, 2003 murder of Adolfo Bruno; (2) the November 4, 2003 murder of Gary Westerman (Fotios and Ty Geas only); (3) the May 19, 2003 attempted murder of Frank Dadabo; (4) the Fall 2003 conspiracy to murder Louis Santos; (5) the Summer 2003 conspiracy to murder Guiseppe Manzi (Fotios and Ty Geas only); (6) the extortion of an owner of various restaurants and strip clubs from 2002 through 2006; (7) the 2004 conspiracy to extort the owners of a vending machine business (Fotios and Ty Geas only); (8) the 2004 attempted extortion of the owners of a strip club

in New York; and (9) loansharking (Nigro only).[1]

Count Three charged all three defendants with murdering and aiding and abetting the murder of Adolfo Bruno to obstruct justice in violation of Title 18, United States Code, Section 1512.  Count Four charged all three defendants with murdering and aiding and abetting the murder of Adolfo Bruno in aid of racketeering, in violation of Title 18, United States Code, Section 1959.

Count Five charged Fotios and Ty Geas – but not Nigro – with murdering and aiding and abetting the murder of Gary Westerman in aid of racketeering, in violation of Title 18, United States Code, Section 1959.

Count Six charged all three defendants with participating in an extortion conspiracy from 2002 through 2006, in violation of Title 18, United States Code, Section 1951, in connection with their efforts to obtain money from owners of various strip clubs and other businesses in Springfield, Massachusetts, and New York, New York.

Count Seven charged Nigro and Fotios Geas – but not Ty Geas – with interstate travel in aid of racketeering, in violation of Title 18, United States Code, Section 1952.

## II.  Trial

Trial commenced on March 14, 2011, and ended on April 1, 2011, when all three defendants were convicted by a jury on all counts and Racketeering Acts in which they were charged, with the exception of Count Three, for which the jury found the defendants not guilty.

The Government's proof at trial included: (1) testimony from four cooperating

---

[1]     The S5 Indictment also included a tenth racketeering act – charging Nigro with operating an illegal gambling business – on which the Government did not proceed at trial.

witnesses – Anthony Arillotta and Felix Tranghese (both made members of the Genovese

Family), and Frankie Roche and Mitchell Weissman (both associates of the Genovese Family) –

who testified about the defendants' membership and association with the Genovese Organized

Crime Family, as well as the defendants' participation in crimes ranging from murder to

attempted murder to extortion to gambling; (2) consensual tape recordings of each of the

defendants making incriminating statements about their own affiliation with the Genovese

Family and their participation in certain criminal activity; (3) testimony from Frank Dadabo, who

survived numerous gun shots by the defendants from point-blank range; (4) testimony from

numerous law enforcement officers about crime scenes, ballistics, and other evidence; (5)

physical evidence recovered from various crime scenes, including the location where Fotios and

Ty Geas had murdered and buried Gary Westerman; (6) phone records of Fotios Geas, Ty Geas,

and their co-conspirators, which showed contacts among the defendants and their co-conspirators

at crucial times to the charged crimes; and (7) surveillance photographs of the defendants

together with each other, with other co-conspirators, and with victims.

## III.   Offense Conduct

The Government concurs with and adopts the offense conduct as set forth in the

Pre-Sentence Reports ("PSRs") of all three defendants.  (See Nigro PSR ¶¶ 37-67; Fotios Geas

PSR ¶¶ 37-67; Ty Geas PSR ¶¶ 37-68).

## IV.   Statutorily Required Life Sentences – Counts Four and Five

All three defendants were convicted on Count Four, which charges a violation of

18 U.S.C. § 1959(a)(1), based on their participation in the murder of Adolfo Bruno in aid of

racketeering.  That statute provides that whoever violates that provision "shall be punished for

murder, by death or life imprisonment." 18 U.S.C. § 1959(a)(1).  The Department of Justice elected before trial not to seek the death penalty in this case.  Thus, all three defendants must be sentenced to life imprisonment on Count Four.[2]

Fotios Geas and Ty Geas were convicted of violating the same statute – 18 U.S.C. § 1959(a)(1) – on Count Five, the murder of Gary Westerman.  Therefore, Fotios Geas and Ty Geas must also be sentenced to life imprisonment on Count Five.

**V.     Statutory Maximum Life Sentences – Counts One and Two**

The Court also may, and should, impose life sentences on all three defendants on Count One (racketeering conspiracy) and Count Two (substantive racketeering).  While the statutory maximum for racketeering offenses begins at twenty years, that maximum is raised to life where, as here, a defendant is convicted of an underlying charge carrying a maximum sentence of life imprisonment.  See 18 U.S.C. § 1963(a).  Here, the jury specifically found in response to a special interrogatory with respect to Count One that all three defendants had agreed to murder Bruno in violation of federal law, New York law, and Massachusetts law, and that Fotios and Ty Geas had conspired to murder Gary Westerman in violation of federal law and Massachusetts law, all as part of the charged racketeering conspiracy.  (Tr. 2189-90).  With respect to Count Two, the jury specifically found that the Government had proven beyond a reasonable doubt that all three defendants participated in and committed the murder of Bruno as Racketeering Act One, and that Fotios and Ty Geas had murdered Gary Westerman as

---

[2]     Nigro appears to argue in his sentencing submission for a sentence of less than life imprisonment.  (See Nigro Memorandum at 7-8).  Any sentence short of life imprisonment would plainly violate the express language and well-established law that Section 1959(a)(1) carries a mandatory sentence of life imprisonment (or death, in applicable cases).

Racketeering Act Two.  (Tr. 2190-91).[3]  The Government therefore seeks imposition of life sentences for each defendant on Counts One and Two, consistent with the applicable Guidelines ranges (discussed below) and as recommended in the Pre-Sentence Reports.

## VI.   Guidelines Range

### A.   Criminal History Category

#### 1.   Nigro

The Government concurs with the findings in Nigro's PSR, specifically that Nigro has 5 criminal history points, which place him in Criminal History Category III.  (See Nigro PSR ¶¶ 123 – 134).

#### 2.   Fotios Geas

The Government concurs with the findings in Fotios Geas's PSR, specifically that Geas has 11 criminal history points, which place him in Criminal History Category V.  As the PSR also correctly notes, Fotios Geas is a career offender pursuant to U.S.S.G. § 4B1.1.[4]  (See Fotios Geas PSR ¶¶ 128-148).

#### 3.   Ty Geas

The Government concurs with the findings in Ty Geas's PSR, specifically that Geas has 11 criminal history points, which place him in Criminal History Category V.  As the

---

[3]     The underlying charged violations of federal and state law with respect to the murders of Bruno and Westerman carry statutory maximum sentences of life imprisonment.  See 18 U.S.C. § 1512(a)(1)(C); New York State Penal Law §§ 125.25 and 105.15; Massachusetts General Laws Chapter 265, Section 1, and Chapter 274, Section 7.

[4]     Section U.S.S.G. § 4B1.1(b) provides that the offense level is the greater of (1) the offense level as set forth in the career-offender table contained within that section, or (2) the otherwise applicable offense level.  The Government sets forth both calculations separately for each group, below.

PSR also correctly notes, Ty Geas is a career offender pursuant to U.S.S.G. § 4B1.1.  (See Ty

Geas PSR ¶¶ 128-148).

     **B.**    **Grouping**

     The defendants' conduct breaks down into the following sentencing groups,

pursuant to U.S.S.G. § 3D1.2:[5]

| Sentencing Group Number | Conduct | Counts / Racketeering Acts |
|---|---|---|
| One | Murder of Adolfo Bruno | Counts One and Two (Racketeering Act One); Count Four |
| Two | Murder of Gary Westerman (Fotios and Ty Geas only) | Counts One and Two (Racketeering Act Two); Count Five |
| Three | Attempted Murder of Frank Dadabo | Counts One and Two (Racketeering Act Three) |
| Four | Conspiracy to Murder Louis Santos | Counts One and Two (Racketeering Act Four) |
| Five | Conspiracy to Murder Guiseppe Manzi (Fotios and Ty Geas only) | Counts One and Two (Racketeering Act Five) |
| Six | Extortions and Extortion Conspiracies | Counts One and Two (Racketeering Acts Six, Seven, and Eight); Count Six |
| Seven | Loansharking | Counts One and Two (Racketeering Act Nine) |

     In addition, the defendants were convicted of participating in a racketeering

---

[5]     Pursuant to U.S.S.G. § 2E1.1, the base offense level for the racketeering offense charged in Count One of the Indictment is the greater of 19 or the offense level applicable to the underlying racketeering activity.  As discussed herein, the offense level applicable to the underlying racketeering activity far exceeds 19.

conspiracy that involved robbery and narcotics trafficking; however, because that conduct does not impact the Guidelines, we have not broken that into separate groups.

**C.     Guidelines Analysis – Without Reference to Career Offender Provisions**

      i.     <u>Group One: Murder of Adolfo Bruno</u>

          (a)     *Base Offense Level*

The base offense level is 43, pursuant to U.S.S.G. § 2A1.1(a), which applies to "First Degree Murder."

The underlying New York state and Massachusetts statutes charged here – N.Y. Penal Code § 125.25 and Massachusetts General Laws Chapter 265, Section 1 – are denominated as "murder in the second degree."  But that is not determinative.  Indeed, the Second Circuit has held that, although N.Y. Penal Code § 125.25 "would have characterized the murder of [victim] only as second degree murder, the task of the district court was to find the offense level corresponding to the most analogous federal offense. . . . We hold that the district court did not err in concluding that the most analogous federal offense was first degree murder under § 1111." <u>United States</u> v. <u>Minicone</u>, 960 F.2d 1099, 1110 (2d Cir. 1992).  Thus, in <u>Minicone</u>, the Second Circuit affirmed the district court's use of the Guidelines offense level for first-degree murder where the underlying state offense was a violation of New York state's second-degree murder statute, N.Y. Penal Law § 125.25.  <u>Id.</u>  Following <u>Minicone</u>, Judge Scheindlin held that, "the same conduct that constitutes second-degree murder under New York state law also constitutes first-degree murder under federal law." <u>Guzman</u> v. <u>United States</u>, 277 F. Supp. 2d 255, 260 (S.D.N.Y. 2003) (Scheindlin, J.).  <u>See also</u> <u>United States</u> v. <u>Stantini</u>, 2008 WL 901449 at * 6 (E.D.N.Y. March 27, 2008) (same).  As Judge Scheindlin ruled, under the Guidelines for

racketeering offenses, "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."  Guzman, 277 F. Supp. 2d at 260 (quoting U.S.S.G. § 2E1.1).  Further, "[u]nder federal law, any 'willful, deliberate, malicious and premeditated killing . . . is murder in the first degree.'" Id. (quoting 18 U.S.C. § 1111(a)).  Thus, Judge Scheindlin found, "first-degree murder in violation of section 1111 is the federal offense most analogous to the murders [charged under N.Y. Penal Code § 125.25] for which [defendant] was convicted and U.S.S.G. § 2A1.1 was the correct Guideline for determining [defendant]'s base offense level." Id. (citing Minicone).

> (b)     *Enhancements*

For Arthur Nigro, the base offense level is increased by 4, pursuant to U.S.S.G. § 3B1.1(a), because the defendant was an organizer and leader in the murder plan, which involved five or more participants (Nigro, Arillotta, Tranghese, John Bologna, Fusco, Fotios Geas, Ty Geas, and Frankie Roche).  Specifically, Nigro – in his capacity as Acting Boss of the Genovese Family – ordered both Arillotta and Tranghese to carry out the murder, and gave instructions on how he wanted it done.

For Fotios Geas, the base offense level is increased by 3, pursuant to U.S.S.G. § 3B1.1(b), because he was a manager or supervisor (of Frankie Roche) in criminal activity that involved five or more participants.  Geas recruited Roche, provided him with guns, and gave instructions on how to commit the murder.

No role enhancement is warranted as to Ty Geas.

> (c)     *Guidelines Range for Group One*

The total offense level for Group One is thus 47 for Nigro, 46 for Fotios Geas, and

9

43 for Ty Geas.  At their respective criminal history categories, the Guidelines range for each

defendant on Group One is life.

        ii.    <u>Group Two: Murder of Gary Westerman</u>

        (a)    *Base Offense Level*

The base offense level for Group Two, the murder of Gary Westerman, is also 43,

for the same reasons as explained above in the context of Group One, the murder of Adolfo

Bruno.

        (b)    *Enhancements*

No enhancements are warranted as to Group Two.

        (c)    *Guidelines Range for Group Two*

The total offense level for Group Two is thus 43 for Fotios Geas and for Ty Geas.

At their respective criminal history categories, the Guidelines range for each defendant on Group

Two is life.

        iii.    <u>Group Three: Attempted Murder of Frank Dadabo</u>

        (a)    *Base Offense Level*

The base offense level for Group Three, the attempted murder of Frank Dadabo, is

33, pursuant to U.S.S.G § 2A2.1, because the object of the offense would have constituted first

degree murder had Dadabo been killed.

        (b)    *Enhancements*

A four-level enhancement is warranted as to each defendant pursuant to U.S.S.G.

§ 2A2.1(b)(1)(A) because the victim sustained life-threatening bodily injury.  Dadabo was shot

nine times, was hospitalized for two weeks, was in a wheelchair for two months, and continues to

have difficulty breathing as a result of his injuries.

For Arthur Nigro, the base offense level is increased by 4, pursuant to U.S.S.G. § 3B1.1(a), because the defendant was an organizer and leader in the murder plan, which involved five or more participants (Nigro, Arillotta, John Bologna, Fotios Geas, Ty Geas). Specifically, Nigro ordered Arillotta to carry out the murder, and gave instructions on how he wanted it done.

No role enhancement is warranted for either Fotios or Ty Geas.

        (c)    *Guidelines Range for Group Three*

The total offense level for Group Three is thus 41 for Arthur Nigro and 37 for each of Fotios Geas and Ty Geas. At their respective criminal history categories, the Guidelines range for each defendant on Group Three is: (1) 360 months to life for Nigro; (2) 324 to 405 months for Fotios Geas, and; (3) 324 to 405 months for Ty Geas.

        iv.    <u>Group Four: Conspiracy to Murder Louis Santos</u>

        (a)    *Base Offense Level*

The base offense level for Group Four, the conspiracy to murder Louis Santos, is 33, pursuant to U.S.S.G § 2X1.1(a) and § 2A2.1, because the object of the offense would have constituted first degree murder had Santos been killed.

        (b)    *Enhancements*

A four-level enhancement is warranted for each of Fotios and Ty Geas, pursuant to U.S.S.G. § 2A.21(b)(2) because the offense involved the offer of something of pecuniary value for undertaking the money. Specifically, Fotios and Ty Geas offered Frankie Roche thousands of dollars to commit the crime.

For Arthur Nigro, the base offense level is increased by 4, pursuant to U.S.S.G. §

11

3B1.1(a), because the defendant was an organizer and leader in the murder plan, which involved

five or more participants (Nigro, Arillotta, Fotios Geas, Ty Geas, and Frankie Roche).

Specifically, Nigro ordered Arillotta to carry out the murder, and gave instructions on how he

wanted it done.

Three-level enhancements are warranted for each of Fotios and Ty Geas, pursuant

to U.S.S.G. § 3B1.1(b), because they supervised Frankie Roche's role in the offense.

(c)     *Guidelines Range for Group Four*

The total offense level for Group Four is thus 37 for Arthur Nigro and 40 for each

of Fotios Geas and Ty Geas.  At their respective criminal history categories, the Guidelines range

for each defendant on Group Three is: (1) 235 to 293 months for Nigro; and (2) 360 months to

life for each of Fotios and Ty Geas.

v.     <u>Group Five: Conspiracy to Murder Guiseppe Manzi</u>

(a)     *Base Offense Level*

The base offense level for Group Five, the conspiracy to murder Guiseppe Manzi,

is 33, pursuant to U.S.S.G § 2X1.1(a) and § 2A2.1, because the object of the offense would have

constituted first degree murder had Manzi been killed.

(b)     *Enhancements*

A four-level enhancement is warranted for each of Fotios and Ty Geas, pursuant

to U.S.S.G. § 2A.21(b)(2) because the offense involved the offer of something of pecuniary value

for undertaking the money.  Fotios and Ty Geas offered Frankie Roche thousands of dollars to

commit the crime.

A two-level enhancement is warranted for each of Fotios and Ty Geas, pursuant to

12

U.S.S.G. § 3B1.1(b), because they supervised Frankie Roche's role in the offense.

      (c)    *Guidelines Range for Group Five*

The total offense level for Group Five is thus 39 for each of Fotios Geas and Ty Geas. At their respective criminal history categories, the Guidelines range for each defendant on Group Five is 360 months to life.

      vi.    <u>Group Six: Extortions and Extortion Conspiracies</u>

      (a)    *Base Offense Level*

The base offense level for Group Six, the various extortions and extortion conspiracies in which the defendants took part, is 18, pursuant to U.S.S.G § 2B3.2.

      (b)    *Enhancements*

Two-level enhancements are warranted for each defendant, pursuant to U.S.S.G. § 2B3.2(b)(1) because the extortions involved express and implied threats of bodily injury.

Because the amount demanded and lost by the victims of the defendants' extortions exceeded $250,000, a three-level enhancement is warranted pursuant to U.S.S.G. §§ 2B3.2(2) and 2B3.1(b)(7).

Because a firearm was possessed by each of Fotios and Ty Geas in connection with the attempted extortion of Michael and Anthony Grant, a five-level increase is warranted pursuant to U.S.S.G. § 2B3.2(3)(A)(iii).

For Arthur Nigro, the base offense level is increased by four levels, pursuant to U.S.S.G. § 3B1.1(a), because the defendant was an organizer and leader in the extortion schemes, which involved five or more participants (Nigro, Arillotta, Tranghese, Bologna, Fotios Geas, Ty Geas). Specifically, Nigro ordered Arillotta, Tranghese, and others, to carry out the extortions

13

and to deliver proceeds to him.

       (c)    *Guidelines Range for Group Six*

The total offense level for Group Six is thus 32 for Arthur Nigro and 28 for each of Fotios Geas and Ty Geas.  At their respective criminal history categories, the Guidelines range for each defendant on Group Six is: (1) 151 to 188 months for Nigro; (2) 130 to 162 months for Fotios Geas; and (3) 130 to 162 months for Ty Geas.

      vi.    <u>Group Seven: Loansharking</u>

       (a)    *Base Offense Level*

The base offense level for Group Seven, loansharking, is 20, pursuant to U.S.S.G § 2E2.1.

       (b)    *Enhancements*

A three-level enhancement is warranted, pursuant to U.S.S.G. § 2E2.1(b)(1)(C) because a firearm was brandished and possessed as part of the collection of an unlawful debt. The firearm was brandished by Dennis Colossacco, one of the associates in the Florida crew of the Genovese Family who was seeking to collect money through extortionate means for Nigro.

A two-level enhancement is warranted, pursuant to U.S.S.G. § 2E2.1(b)(2)(B) because one of the victims suffered bodily injury as part of the collection of unlawful debt.  The injury was inflicted by members of the Florida crew of the Genovese Family, as part of an effort to collect money through extortionate means for Nigro.

Fotios and Ty Geas were convicted of being a part of a RICO conspiracy that engaged in loansharking, but no specific acts of loansharking.  Accordingly, the enhancements would not be warranted as to Fotios and Ty Geas.

(c)    *Guidelines Range for Group Seven*

The total offense level for Group Seven is thus 25 for Arthur Nigro, and 20 for each of Fotios and Ty Geas.  At their criminal history categories, the Guidelines range for Nigro on Group Seven is 63 to 78 months; for Fotios Geas the range is 63 to 78 months; and for Ty Geas the range is 63 to 78 months.

**D.    Guidelines Analysis – Career Offender Provisions**

i.    <u>Group One: Murder of Adolfo Bruno</u>

The statutory maximum for the charged murder is life imprisonment.  Thus, pursuant to U.S.S.G. § 4B1.1(b)(A), the criminal history category is VI and the offense level is 37.  This would result in a range of 360 months' to life imprisonment.  However, because the offense level is higher without reference to the career offender Guidelines, the career offender Guidelines are inapplicable.

ii.    <u>Group Two: Murder of Gary Westerman</u>

The statutory maximum for the charged murder is life imprisonment.  Thus, Pursuant to U.S.S.G. § 4B1.1(b)(A), the criminal history category is VI and the offense level is 37.  This would result in a range of 360 months' to life imprisonment.  Again, because the offense level is higher without reference to the career offender Guidelines, the career offender Guidelines are inapplicable.

iii.    <u>Group Three: Attempted Murder of Frank Dadabo</u>

The statutory maximum for the attempted murder is 25 years.  <u>See</u> N.Y. Penal Law §§ 125.25 and 110.00 and 70.00.   Thus, pursuant to U.S.S.G. § 4B1.1(b)(B), the criminal history category is VI and the offense level is 34.  This would result in a range of 262 to 327

months' imprisonment.  Because the offense level is higher without reference to the career offender Guidelines, the career offender Guidelines are inapplicable.

iv.    <u>Group Four: Conspiracy to Murder Louis Santos</u>

The statutory maximum for the murder conspiracy is 25 years.  <u>See</u> N.Y. Penal Law §§ 125.25 and 105.15.  Thus, Pursuant to U.S.S.G. § 4B1.1(b)(B), the criminal history category is VI and the offense level is 34.  This would result in a range of 262 to 327 months' imprisonment, but, because the offense level is higher without reference to the career offender Guidelines, the career offender Guidelines are inapplicable.

v.    <u>Group Five: Conspiracy to Murder Guiseppe Manzi</u>

The statutory maximum for the murder conspiracy is 20 years.  <u>See</u> Mass. Gen. Law Chapter 265, Section 1; and Chapter 274, Section 7.  Thus, Pursuant to U.S.S.G. § 4B1.1(b)(B), the criminal history category is VI and the offense level is 32.  This would result in a range of 210 to 262 months' imprisonment.  Because the offense level is higher without reference to the career offender Guidelines, the career offender Guidelines are inapplicable.

vi.    <u>Group Six: Extortions and Extortion Conspiracies</u>

The statutory maximum for the extortion is 20 years.  Thus, Pursuant to U.S.S.G. § 4B1.1(b)(B), the criminal history category is VI and the offense level is 32.  This results in a range of 210 to 262 months' imprisonment, which is higher than the otherwise-applicable Guidelines range.

vi.    <u>Group Six: Loansharking</u>

The statutory maximum for the extortion is 20 years.  Thus, Pursuant to U.S.S.G. § 4B1.1(b)(B), the criminal history category is VI and the offense level is 32.  This results in a

16

range of 210 to 262 months' imprisonment, which is higher than the otherwise-applicable

Guidelines range.

     **E.**     **Guidelines Range**

         **1.**     **Arthur Nigro**

       The following chart summarizes the Guidelines ranges for each of the groups with

respect to defendant Nigro.

| Group Number | Guidelines Range |
|---|---|
| One – Bruno Murder | Life |
| Two – Westerman Murder | N/A (not charged) |
| Three – Dadabo shooting | 360-Life |
| Four – Santos murder conspiracy | 235-293 |
| Five – Manzi murder conspiracy | N/A (not charged) |
| Six - Extortion | 151-188 |
| Seven - Loansharking | 63-78 |

         **2.**     **Fotios Geas and Ty Geas**

       The following chart summarizes the Guidelines range for each of the groups for

Fotios Geas and Ty Geas, both of whom are career offenders pursuant to U.S.S.G. § 4B1.1.

| Group Number | Guidelines Range (career offender Guideline) | Guidelines Range (without career offender Guideline) |
|---|---|---|
| One – Bruno Murder | 360-life | Life |
| Two – Westerman Murder | 360-life | Life |
| Three – Dadabo shooting | 262-327 | 324-405 |
| Four – Santos murder conspiracy | 262-327 | 360-life |

| Five - Manzi murder conspiracy | 210-262 | 360-life |
| Six - Extortion | 210-262 | 130-162 |
| Seven - Loansharking | 210-262 | 63-78 |

F.      **Grouping Analysis**

Under the grouping analysis set for at U.S.S.G. § 3D1.4, the Group with the highest Guidelines Range is Group One.

For Nigro, the offense level for Group One is 47.  Group Three adds one-half unit and Group Five adds one-half unit.  Groups Six and Seven add no units.  Because there are 2 units, Nigro's combined offense level is increased by two offense levels, from 47 to 49.  The Guidelines Range is life imprisonment.

For Fotios Geas, the offense level for Group One is 46.  Group Two adds one unit and Groups Three through Five add one-half unit each.  Groups Six and Seven add no units.  Because there are 3.5 units, Fotios Geas's combined offense level is increased by 4 levels, to 50.  The Guidelines Range is life imprisonment.

For Ty Geas, the offense level for Group One is 43.  Group Two adds one unit and Groups Three through Five add one-half unit each.  Groups Six and Seven add no units.  Because there are 3.5 units, Ty Geas's combined offense level is increased by 4 levels, to 47.  The Guidelines Range is life imprisonment.

VII.    **Sentencing Factors and Discussion**

The Government now assesses the relevant sentencing factors under Title 18, United States Code, Section 3553(a).  As discussed below, separate and apart from the statutory mandatory sentence of life imprisonment, the only reasonable, fair, and just sentence is life

18

imprisonment for all three defendants.  Moreover, while the Court must sentence the defendants to life on Counts Four and Five, the Court also should sentence all three defendants to the statutory maximum (but not statutorily-mandated) sentence of life on Counts One and Two.

### 1.    Nature and Circumstances of the Offense and Characteristics of the Defendant

Arthur Nigro ordered, and Fotios and Ty Geas carried out, the murder of Adolfo Bruno.  The same three defendants also planned and committed what would have been – but for sheer luck – the murder of Frank Dadabo.  Fotios and Ty Geas murdered Gary Westerman and buried his body in the woods.  All three defendants plotted to kill Louis Santos, and Fotios and Ty Geas plotted to kill Guiseppe Manzi.  There can hardly be a clearer case where the nature and circumstances of the offense call for serious punishment.

There are no mitigating factors applicable to the murders here.  The defendants did not act on the spur of the moment, without a chance for reflection.  Nor did they act under any mitigating factors such as partial duress, mental incapacity, or imperfect self-defense.  The murders, attempted murder, and conspiracies to commit murder were calculated, premeditated, and thoroughly and carefully planned.  All three defendants participated in the murders and murder plots largely to promote and protect their own standing in the mafia.

Nor is there anything in the personal characteristics of any of the defendants to argue against the mandatory life sentences that they will receive.  Nigro, Fotios Geas, and Ty Geas have each spent their adult lives working for the mob, committing crimes for a living.  The defendants' criminal histories – particularly those of Fotios and Ty Geas, who are career offenders under the Guidelines – reflect that.  Each of these defendants have consciously chosen

19

this course for themselves.  They have chosen to live their lives as criminals and they have chosen to kill.

**2.     Need For Sentence to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

A sentence of life imprisonment is necessary to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment.  A sentence of life imprisonment is the only sentence that shows respect for the law and just punishment.

**3.     Need for Adequate Deterrence and Need to Protect the Public**

All three defendants have demonstrated an absolute inability to be deterred.  Even before this case, the defendants had each sustained serious felony convictions.  Prior significant terms of imprisonment have done nothing to change the defendants' conduct.  If anything, these defendants have committed crimes of progressively increasing seriousness over the years.

The defendants have shown no acceptance of responsibility or remorse for their conduct.  To wit, Arthur Nigro begins his sentencing submission by asserting that he is not guilty of the crimes for which he was convicted.  Nor have the defendants ever demonstrated any acknowledgment of their vicious acts to any of the victims, or the victims' families.[6]  Again, while life sentences are mandated by law, those sentences are also fully justified and reasonable given the particular facts and circumstances here.

---

[6]     The Government has notified all of the victims, and their surviving family members, of the sentencing proceeding.  The Government currently does not expect any victims to opt to address the Court.  For reasons that no doubt are largely personal and private, all of the victims and survivors with whom we have spoken have stated that they prefer not to speak in open court at sentencing.

## VIII.   Forfeiture

The Government seeks forfeiture orders in the following amounts: (1) $234,000 for Nigro; (2) $120,000 for Fotios Geas; and (3) $135,000 for Ty Geas.  These figures are based on the trial testimony about certain specific criminal proceeds that each defendant received in the course of the charged crimes, giving the defendants every benefit of the doubt regarding timing and amounts.[7]  These figures are also a fraction of the forfeiture amounts recommended in the PSRs.  The Government recognizes that the defendants will have little to no earning capacity while imprisoned; nonetheless, the Government requests that the Court order that a percentage of the defendants' UNICOR earnings while working in prison be allocated to forfeiture.  The Government will forward a proposed forfeiture order to the Court before sentencing.

---

[7]   See Tr. 512-13 (Arillotta sent $3,000 per month to Nigro and Pat DeLuca in 2000 and 2001; allocating half of this to Nigro comes out to $18,000); Tr. 661 (Arillotta gave $10,000 cash to Fotios Geas); Tr. 708, 771-772 (Arillotta gave Fotios Geas and Ty Geas $6,000 per month to split from the extortion of Santaniello from the Spring of 2004 until at least 2005; even assuming this lasted only one full year, this comes out to $36,000 for each of Fotios and Ty Geas); Tr. 734 (Arillotta and others split $1,000 per month from Carlo Sarno from approximately 2005 until 2007; even assuming this lasted only one year, this comes out to at least $2,000 for each of Fotios and Ty Geas); Tr. 760-62 (describing income from Fotios and Ty Geas's gambling, loansharking, and marijuana businesses, which totaled between $18,000 and $30,000 per month in 2004; even using the lower-end $18,000 figure equates to $72,000 for each of Fotios and Ty Geas); Tr. 707-08; 761-65 (Arillotta sent between $6,000 and $6,500 – and at times as much as $12,000 – per month to Nigro from 2004 through 2008; even using the $6,000 figure, and even assuming only three full years of payments, this comes out to $216,000 for Nigro); Tr. 772 (Ty Geas obtained $25,000 from Santaniello in 2007) .

**IX.    Conclusion**

For all of these reasons, all three defendants should be sentenced to life

imprisonment on Counts One, Two, and Four, and Fotios and Ty Geas should be sentenced to

life imprisonment on Count Five.

Dated:          New York, New York
                September 7, 2011


                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York,
                                    Attorney for the United States
                                    of America



                          By:_____/s/_____
                                    Elie Honig / Daniel S. Goldman
                                    Assistant United States Attorneys
                                    Tel.:  (212) 637-2474 / 2289