USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-27-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

-against-

EMILIO FUSCO,
                Defendant.
-----------------------------------------------------------x

S4 09 Cr. 1239 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Before the Court is defendant Emilio Fusco's motion to preclude evidence of his participation in two murders. Fusco contends that presenting evidence of the murders will violate the terms of his extradition from the Italian Republic, which specified he should not be tried for crimes of voluntary homicide. Because the terms of extradition foreclose charges, not evidence, the motion is denied.

## BACKGROUND

### a. Indictment

        Count One of the Indictment (Docket # 63) charges Fusco with participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and Count Two charges Fusco with racketeering in violation of 18 U.S.C. § 1962(c). (Indictment ¶¶ 1-37.) Count One alleges that Fusco conspired to participate in a criminal enterprise that engaged in criminal activities; Fusco is alleged to have participated in murder and conspiracy to commit murder. (Indictment ¶¶ 1, 2, 11, 16-17.) As special sentencing allegations in Count One, the Indictment alleges that Fusco participated in the murders of Adolfo Bruno and Gary Westerman. (Indictment ¶¶ 18-21.) Count Two alleges that Fusco committed several racketeering acts including the murders of

Bruno and Westerman. (Indictment ¶¶ 25-26.) Counts Three, Four and Five charge certain of Fusco's co-defendants, but not Fusco, with the substantive crimes of murdering Bruno and Westerman in aid of racketeering and for the purpose of obstructing justice. (Indictment ¶¶ 38-42.) Counts Three, Four and Five were death penalty-eligible. 18 U.S.C. §§ 1512 (citing 18 U.S.C. § 1111); 18 U.S.C. § 1959. Finally as relates to Fusco, Counts Six, Seven and Thirteen charge him with extortion conspiracy, extortion and interstate travel in aid of racketeering, respectively. (Indictment ¶¶ 43-44, 50.)

b. Extradition Proceedings

Fusco was arrested in Italy on July 29, 2010, on a provisional arrest warrant pursuant to a warrant issued in the Southern District of New York on July 20, 2010. (Aronwald Aff. ¶ 2; Docket # 65.) The United States requested his extradition. (Lind Aff. Ex. 5, Translation of Italian Supreme Court of Cassation Opinion, at 2.) On January 18, 2011, the Court of Appeals of Naples "determined that conditions existed that were favorable to the extradition of [Fusco]" on all charges in the Indictment, noting that none of the charges against Fusco was punishable by death. (Id. at 1-2). On appeal, Fusco argued that the Court of Appeals decision erroneously approved his extradition on a number of death penalty-eligible charges, a result prohibited by the extradition treaty between Italy and the United States (see Lind Aff Ex. 1, Extradition Treaty, at Art. IX). Specifically, he argued that he was charged in Counts Three and Four of the Indictment and that Count Two constituted a charge against him of violating 18 U.S.C. § 1512 (murder to obstruct justice). (Id. at 2-3.) Having urged that he was charged under section 1512, he further argued that the extradition request should have been denied because the United States had failed to attach to its request the text of the statute describing the penalty for a violation of section 1512. (Id. at 3.)

On April 19, 2011, the Italian Supreme Court of Cassation issued its opinion responding to these arguments and permitting the extradition of Fusco to the United States. (Id.) The court held that the "pertinent criminal events for which extradition [was] sought" were racketeering conspiracy, racketeering, extortion conspiracy, extortion, and intestate travel in aid of racketeering and extortion. (Id. at 2.) The Court of Cassation stated that it was "indisputable" that Fusco's conduct "as it is legally characterized in the extradition request, is punishable by sentences other than death." (Id. at 3-4.) However, the court noted that the same events that gave rise to the racketeering charges in Count Two, specifically the murders of Bruno and Westerman, were also "voluntary homicide . . . punishable in the United States by the death penalty." (Id. at 4.) Therefore, while the court concluded that "the conditions for Fusco's extradition exist for the second count with respect to all of the actions described therein, since [Fusco's] participation in homicides is placed under such a heading solely as a manifestation of racketeering activity," the court specified that "for the crimes of voluntary homicide, the conditions favorable to extradition do not exist." (Id.) The court concluded by ruling that the Court of Appeals of Naples "must be reversed to the limited extent that it stated that conditions existed that were favorable to the extradition . . . for crimes of voluntary homicide," whereas "the remainder of the appeal [was] rejected." (Id. at 5.) In light of this conclusion, Fusco's argument that the United States had failed to attach the section 1512 penalty text became immaterial. (Id.)

Based on this decision, on May 11, 2011, the Italian Ministry of Justice granted extradition of Fusco on all charges against him in the Indictment. (Aronwald Aff. Ex. C., Extradition Order.)

c. Defendant's Motion

On July 25, 2011, Fusco filed the present motion, asking the court to preclude evidence of his participation in the Bruno and Westerman murders. (Docket # 202.) The stated basis for the motion is "that presenting such evidence will violate the Rule of Specialty requiring that an extradited defendant be tried only for those crimes on which extradition was granted." (Def. Mem. Supp. Motion to Preclude Evidence of the Bruno and Westerman Murders, at 1.) In Fusco's view, the rule of specialty prohibits not only trying Fusco for the murders but also trying Fusco on counts that "include, or require proof of, his participation or culpability in the two murders." (Def. Mem. 7).

Fusco also argues that the government has in fact charged him, improperly, with voluntary homicides, and asks the Court to prohibit prosecution for those crimes. (Def. Mem. 2.) As proof, Fusco points to the following: (1) the statement by an Assistant United States Attorney ("AUSA") at a pretrial proceeding that "Mr. Fusco is charged with committing two murders, the murders of Bruno and Westerman" (Aronwald Aff. ¶ 4; Prelim. Conf. Tr. 34, June 17, 2011); (2) the Indictment itself, which Fusco asserts "plainly charge[s] him with both conspiracy to murder [Bruno and Westerman] as well as the substantive participation in their murders as Racketeering Acts One and Two in Counts One and Two." (Aronwald Aff. ¶ 4.)

In his reply memorandum, Fusco also argues that the presence in the Indictment of any murder allegations against him amounts to trial for voluntary homicide, which trial was prohibited by the language of the Court of Cassation opinion. (Def. Reply Mem. Supp. Motion to Prohibit Prosecution for Crimes of Voluntary Homicide, at 1, 7.)

4

## DISCUSSION

a. Applicable Law

The Second Circuit "has not conclusively decided" whether a defendant has standing to invoke the rule of specialty. United States v. Cuevas, 496 F.3d 256, 262 (2d Cir. 2007) (citing United States v. Banks, 464 F.3d 184, 191 (2d Cir. 2006). In cases in which the issue might have arisen, the Second Circuit has not found it necessary to decide the issue, because in those cases the defendant's arguments "plainly fail[ed] on the merits." Id.; Banks 464 F.3d at 191. In this case, too, the Court declines to address standing, because defendant Fusco's arguments plainly fail on the merits.

The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." Cuevas, 496 F.3d at 262 (quoting United States v. Baez, 349 F.3d 90, 92 (2d Cir. 2003) (per curiam)). "Typically, the rule of specialty is invoked to prescribe the specific crimes for which a defendant may be tried following extradition." Id. (citing United States v. Campbell, 300 F.3d 202, 209 (2d Cir. 2002)). The bilateral extradition treaty between the United States and Italy reflects the same limitation by crime: "A person extradited under this Treaty may not be detained, tried, or punished in the Requesting Party except for . . . the offense for which extradition has been granted . . . ." Extradition Treaty, U.S.-Italy, Art. XVI, Oct. 13, 1983, 35 U.S.T. 3023.

However, the rule of specialty "does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state." United States v. Flores, 538 F.2d 939, 944 (2d Cir. 1976). Flores distinguishes between the actual crime with which the defendant is charged and the evidence, which may also relate to uncharged crimes. In Flores, the defendant had allegedly participated in an international narcotics conspiracy from

5

1968 to 1971; but Spain, where he was found, had not entered an extradition treaty approving extradition for narcotics smuggling until 1970. Id. at 940-42. When Spain agreed to extradition, it limited the permissible charges to those for acts occurring after the treaty went into effect. Id. Defendant was charged with a conspiracy beginning in 1970, but the government also sought to establish the conspiracy by offering evidence of the conspirators' acts predating 1970. Id. at 942. Prior to trial, the court found the evidence to be inadmissible. Id. The Second Circuit reversed, noting that the argument against admissibility "fail[ed] to distinguish between the *crimes* for which Flores may be charged and tried . . . and the *evidence* that might be introduced to illuminate and establish the crimes charged." Id. at 943 (emphasis in original). The rule of specialty "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state . . . ." Id. at 944. Prior-act evidence may be admissible as proof of the charged conduct, even though the defendant could not be charged with those crimes. Id.

  b. Application

As a preliminary matter, Fusco's argument that the government has explicitly charged Fusco with murder (see Aronwald Aff. ¶ 4; Def. Mem. 2) merits little discussion. Fusco is not named in the substantive murder counts, Counts 3 through 5. An AUSA's loosely phrased statement at a pretrial conference that Fusco was charged with the Bruno and Westerman murders cannot supersede the plain language of the grand jury's indictment.

Nor is there merit to the contention that the government has implicitly indicted Fusco for those crimes (see Aronwald Aff. ¶ 4; Def. Mem. 2) or, similarly, that Fusco will be tried for those crimes by making them predicate racketeering acts. (see Def. Reply Mem. 1, 7). There is, again, an important distinction between presenting evidence of a prior act, even a charged racketeering act, and charging a person with a crime, a distinction made clear both in

Flores and in the Court of Cassation opinion. The Court of Cassation, for its part, approved the use of Fusco's alleged participation in the Bruno and Westerman murders as evidence but foreclosed substantive murder charges: "[C]onditions for Fusco's extradition exist for the second count with respect to all of the actions described therein, since [Fusco's] participation in homicides is placed under such a heading solely as a manifestation of racketeering activity . . . [but] for the crimes of voluntary homicide, the conditions favorable to extradition do not exist." (Lind Aff. Ex. 5, at 4.). Thus, the Italian court did not foreclose Count Two, the racketeering count, or evidence in support of Count Two, even though the "homicides" were alleged as racketeering acts.

The rule of specialty dictates the same result: it forecloses charges, not evidence relevant to approved charges. See Flores, 538 F.2d at 944. In this case, the Court of Cassation opinion and the Extradition Order explicitly approve Fusco's extradition for the racketeering crimes. (Lind Aff. Ex. 5, at 4; Aronwald Aff. Ex. C, at 1.) Therefore, the rule of specialty presents no bar to presenting evidence of those crimes.

## CONCLUSION

For the reasons outlined above, defendant Fusco's motion to preclude evidence based on the rule of specialty is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 26, 2011

7